ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

CHARLES F. BISESTO (CABN 271353)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6405
    FAX: (415) 436-7234
    Charles.Bisesto@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 23-239-002 HSG |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | |
| JAIR RAMIREZ-CASTILLO, | Date: January 22, 2025<br>Time: 10:00 a.m.<br>The Honorable Haywood S. Gilliam Jr. |
| Defendant. | |

## I.    INTRODUCTION

In the Spring and Summer of 2023, the Federal Bureau of Investigations (FBI) identified, and began investigating, a Bay Area resident who sold drugs in the Oakland and San Francisco areas of the Bay Area.  Agents identified this drug dealer as Jair Ramirez-Castillo.  Over the course of seven months, Mr. Ramirez-Castillo sold over two pounds of fentanyl to a law enforcement confidential source.  In July of 2023, FBI agents successfully obtained a wiretap order allowing them to intercept wire and electronic communications over Mr. Ramirez-Castillo's phone line.  Those wire intercepts further confirmed that Mr. Ramirez-Castillo was a professional drug dealer who operated, almost nightly, in the Tenderloin District of San Francisco.

On August 2, 2023, a six-count Indictment was filed charging Mr. Ramirez-Castillo, as well as

Javier Marin-Gonzales, and Christian Grajeda-Varela, for his conduct as a drug dealer.  Dkt. 1.  The Indictment charged Mr. Ramirez-Castillo in Counts Four, Five and Six with violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) – Distribution of 40 Grams and More of a Mixture and Substance Containing a Detectable Amount of Fentanyl.  *Id*.  An arrest warrant for Mr. Ramirez-Castillo was issued in conjunction with the Indictment.

Pursuant to the Indictment and associated arrest warrant, Mr. Ramirez-Castillo was arrested on the morning of August 3, 2023.  During that arrest, agents found additional fentanyl and large quantities of cash inside his apartment.  Mr. Ramirez-Castillo was subsequently brought to Magistrate Court to appear on the charges.  On August 4, 2023, Mr. Ramirez-Castillo was arraigned on the Indictment and entered pleas of not guilty.  Dkt. 7.  On August 9, 2023, Mr. Ramirez-Castillo was ordered detained and remanded to the custody of the United States Marshall Service.  Dkt. 14.  The matter was assigned to District Court Judge Haywood S. Gilliam Jr. for all purposes.

On December 11, 2024, pursuant to a plea agreement with the government, Mr. Ramirez-Castillo pled guilty to Count Six in the Indictment.  Dkts. 97, 99.  Mr. Ramirez-Castillo's guilty plea was entered pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure.  The matter was set for a sentencing date of January 22, 2025.

## II.    FACTS

In July of 2022, the FBI began investigating a drug dealer who they eventually identified as Javier Marin-Gonzales.  Presentence Report ("PSR") ¶ 9.  Undercover agents contacted Marin-Gonzales and, on three separate dates, a confidential source successfully purchased large quantities of fentanyl from him.  PSR ¶ 11.  In January of 2023, the confidential source again attempted to arrange the purchase of eight ounces of fentanyl from Marin-Gonzales.  PSR ¶ 12.  On this occasion, the confidential source received a response from an individual claiming to be Marin-Gonzales' brother and offering to conduct the fentanyl transaction in his stead.  *Id*.  Agents later identified Marin-Gonzales' purported brother as the defendant, Jair Ramirez-Castillo.  PSR ¶¶ 13, 14.

On January 13, 2023, the confidential source met Ramirez-Castillo in Oakland and successfully purchased eight ounces of fentanyl.  PSR ¶¶ 15, 16.  On March 30, 2023, the confidential source

1    successfully purchased another eight ounces of fentanyl from Mr. Ramirez-Castillo in Oakland.  PSR ¶¶

2    17-18.  And then, on July 21, 2023, the confidential source successfully purchased twelve ounces of

3    fentanyl from Ramirez-Castillo.  PSR ¶ 22.

4          At the time of the third transaction with the confidential source, in July of 2023, the FBI had

5    obtained judicial authorization to intercept Mr. Ramirez-Castillo's phone conversations (both electronic

6    and wire communications) through a court order (*see* CR 23-91421 JSC).  PSR ¶ 20.  The wiretap

7    intercepts established that Mr. Ramirez-Castillo traveled to the Tenderloin District in San Francisco and

8    sold drugs to various individuals almost nightly.  *See* Dkt. 12, *Memorandum in Support of United States'*

9    *Motion for Detention*.  And, on July 21, 2023, when he needed to obtain fentanyl for his third and final

10   drug deal with the confidential source, Mr. Ramirez-Castillo again traveled to the Tenderloin District

11   and obtained the necessary fentanyl from his co-defendant, Christian Grajeda-Varela.  PSR ¶ 21.

12          After the twelve-ounce fentanyl deal on July 21, 2023, the confidential source requested another

13   eight ounces of fentanyl from Mr. Ramirez-Castillo.  PSR ¶ 22.  Mr. Ramirez-Castillo indicated he was

14   able to obtain that quantity of fentanyl and immediately contacted Mr. Grajeda-Varela to obtain the

15   drugs.  PSR ¶¶ 22-23.  On the afternoon of July 21, 2023, agents surveilled Mr. Grajeda-Varela meet

16   with Mr. Ramirez-Castillo in Oakland and provide him with the additional eight ounces of fentanyl.

17   PSR ¶ 24.  Later that afternoon, Mr. Ramirez-Castillo and the confidential source met again, and Mr.

18   Ramirez-Castillo sold the confidential source the additional eight ounces.  PSR ¶ 25.  In total, Mr.

19   Ramirez-Castillo sold approximately 36 ounces of fentanyl over the three transactions.

20          On August 3, 2023, the FBI executed a search warrant on Mr. Ramirez-Castillo's residence in

21   Oakland.  PSR ¶ 17.  Inside Mr. Ramirez-Castillo's home, the agents recovered approximately 391

22   grams of fentanyl, 26.407 grams of which were found in a jacket that belonged to Mr. Ramirez-Castillo.

23   PSR ¶ 26.  The agents also recovered approximately $4,000 in cash.  *Id.*

24          During the search of his home, Mr. Ramirez-Castillo was arrested.  PSR ¶ 5.  Mr. Ramirez-

25   Castillo was subsequently brought to federal court for his initial appearance on a filed indictment

26   charging him for his involvement as a drug dealer.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.    SENTENCING GUIDELINES CALCULATIONS

The government agrees with U.S. Probation's finding that Mr. Ramirez-Castillo is responsible for the fentanyl he distributed to the confidential informant and the fentanyl found inside his home at the time of his arrest in August of 2023.  PSR ¶ 30.  As a result, the Base Offense Level for the drug distribution offense is properly calculated at 30.  *Id*.  Additionally, the government agrees that Mr. Ramirez-Castillo should be provided a three-level reduction pursuant to U.S.S.G. §§ 3E1.1(a) and (b) for acceptance of responsibility, and a further two-level reduction for satisfying the requirements of U.S.S.G. §§ 5C1.2(a)(1)-(5). PSR ¶¶ 33, 38-40.  The government also agrees that Mr. Ramirez-Castillo should be provided a two-point reduction for being a "zero-point offender" pursuant to U.S.S.G. §§ 4C1.1(a)(1)-(10).  PSR ¶ 40.  Finally, the government agrees that Mr. Ramirez-Castillo's Criminal History Category is I.  PSR ¶ 45.

Based upon an adjusted offense level of 23 and a criminal history category of I, the guidelines imprisonment range is 46-57 months.

### A.  Applicable Law

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, deter others from committing similar crimes, protect the public from the defendant, and rehabilitate the defendant.  18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  Section 3553 sets forth several factors that the Court must consider in determining a just sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a); *Carty*, 520 F.3d at 991.  The Guidelines should be the starting point and the initial benchmark.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  Though the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Rita v. United States,* 551 U.S. 338, 350 (2007).

//

UNITED STATES' SENTENCING MEMO.            4
CR 23-239 HSG

**B. Recommended Sentence**

The government agrees that there are circumstances that merit consideration by this Court pursuant to 18 U.S.C. § 3553(b)(1). The government acknowledges the difficult circumstances Mr. Ramirez-Castillo faced during his upbringing in Honduras and the financial motivations that drove him to seek a life in the United States. PSR ¶¶ 52, 54. Moreover, the defendant's criminal history is limited to encounters with United States Immigrations and Customs Enforcement in 2018 and 2019. PSR ¶¶ 48-49. In light of his difficult background, and minimal criminal history, the government believes that a low-end Guidelines sentence is appropriate here.

Nevertheless, the seriousness of Mr. Ramirez-Castillo's offense cannot be overstated. Across three controlled purchases, Mr. Ramirez-Castillo sold enough narcotics to kill over 500,000 people.[1] He had access to large quantities of drugs, and he opted to sell these drugs frequently on the streets of the Bay Area. In fact, as the FBI investigation revealed, and the PSR confirmed, Mr. Ramirez-Castillo lived and worked in the Bay Area for no other purpose other than to sell drugs and profit off the backs of some of the most vulnerable members of our community. *See* PSR ¶ 61. Maybe more importantly, Mr. Ramirez-Castillo made his living selling fentanyl, one of the most poisonous controlled substances.

A within-Guidelines sentence is therefore necessary to reflect the gravity of Mr. Ramirez-Castillo's offenses—indeed, his chosen occupation. For the same reason, such a sentence is essential to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence for others similarly situated who might entertain following a similar path.

Regarding Mr. Ramirez-Castillo's specific history and characteristics, there is no doubt that he comes from an impoverished background. One might even say that his purported intention to "help his family out financially" is noble. PSR ¶ 54. But there are plenty of individuals from similar backgrounds as his, who come to this country hoping to make a living and to support those back home, who do not decide to knowingly peddle drugs that kill others. There are drivers, restaurant workers, store clerks, farmers, and countless other individuals who choose every day to make an honest living,

---

[1] Two milligrams of fentanyl is a potentially lethal dose. U.S. Drug Enforcement Admin., Facts About Fentanyl, Feb. 23, 2022 (https://www.dea.gov/resources/facts-about-fentanyl).

however hard it might be. They did not choose to victimize the vulnerable as Mr. Ramirez-Castillo did; rather, they support their communities and make the Bay Area a vibrant, diverse, and culturally rich corner of this country. Mr. Ramirez-Castillo, however, repeatedly elected to contribute to its decay. He should not be allowed to claim poverty or unfortunate circumstances as an excuse for his chosen lifestyle because there are countless others whose honest living are proof that he was not forced to do what he did. Rather, he *chose* to do it. He should face the consequences for those decisions.

From a specific deterrence standpoint, it is important to point out that Mr. Ramirez-Castillo was arrested in both 2018 and 2019 for Alien Inadmissibility under Section 212 and, on both occasions, was removed from the United States. *See* PSR ¶ 48, 49. Despite these removals, Mr. Ramirez-Castillo illegally returned to the United States, twice, and ultimately made the very unfortunate decision to turn to a career as a drug dealer. A substantial period of incarceration is necessary to stop Mr. Ramirez-Castillo from disobeying the law yet again and returning to the life of a drug trafficker.

For these reasons, the government believes that the Court should impose a sentence of 48 months' imprisonment, the low-end of the applicable Guidelines. Such a sentence satisfies the factors enumerated in 18 U.S.C. § 3553(a) by acknowledging the harm Mr. Ramirez-Castillo has caused and making it clear to the community that those who contribute to the blight facing the Bay Area by participating in the drug trade will be seriously punished.

//

//

//

1

## IV.    CONCLUSION

2          For the foregoing reasons, the government respectfully recommends that the Court sentence Mr.

3   Ramirez-Castillo to a sentence of 48 months of imprisonment on Count Six.  The government also

4   requests that the Court impose a three-year term of supervised release, with each of the terms and

5   conditions recommended by U.S. Probation.

6

7   DATED:  January 15, 2025                                Respectfully submitted,

8                                                           ISMAIL J. RAMSEY
                                                            Attorney for the United States
9

10                                                          _____/s/_____

11                                                          CHARLES F. BISESTO
                                                            Assistant United States Attorney
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28